## CIRCUIT COURT OF THE CITY OF RICHMOND

Louise S. Tyler

   v.

Security Mutual Casualty Co.

December 9, 1981

Case No. LD-909

By JUDGE WILLARD I. WALKER

This matter is before the court on motions for summary judgment by both parties, the issue being whether or not an insurance policy previously issued by Security Mutual Casualty Company was in effect on August 25, 1979, on which date the plaintiff was involved in an accident for which the insurance coverage would have afford protection.

The facts of this case as stipulated by the parties are as follows.

On February 8, 1979, defendant issued an insurance policy to plaintiff effective from February 8, 1979, to May 8, 1979 (a ninety-day renewable policy). Said policy was renewed on May 8, 1979, and was, therefore, in effect until August 8, 1979. Prior to August 8, 1979, defendant mailed and plaintiff received a premium notice in which defendant offered to again renew the policy for an additional three-month period, upon the receipt of the premium. Plaintiff failed to pay the premium by August 8, 1979. On August 15, 1979, defendant mailed a lapse notice to plaintiff which stated that the policy would lapse unless the premium was received by the defendant within fifteen

days of August 8, 1979, the date shown on the lapse notice, or by August 23, 1979.

This lapse notice was received by the plaintiff prior to August 23, 1979. Plaintiff mailed the premium to the defendant after said date; the letter was postmarked August 25, 1979. Said payment was not received by the defendant until August 27, 1979, at which time defendant issued a new policy, effective August 26, 1979. Plaintiff was involved in an automobile accident on August 25, 1979.

I hold that the insurance policy was not in effect on August 25, 1979, and therefore that on this evidence and the applicable law summary judgment should be granted to the defendant.

Plaintiff's policy effectively lapsed on August 23, 1979, fifteen days after date shown on the lapse notice. Since the premium payment was received by the defendant on August 27, 1979, this constituted an offer by the plaintiff for a new contract of insurance. Defendant accepted this offer and validly issued a new policy as of August 26, 1979. Since the accident occurred on August 25, 1979, two days after the lapse of the policy (the same date the premium was mailed, coincidentally), plaintiff was not insured.

The policy was not cancelled, nor was there any attempt by the defendant to cancel the policy. Hence, the cancellation provisions on page 19 of the policy and Virginia Code § 38.1-381.5 are not relevant. As stated in Virginia Code § 38.1-381(f)(1), that section does not apply if "the insurer has manifested its willingness to renew." Plaintiff's counsel readily admits in his letter of October 9, 1981, that the above-stated section is inapplicable; however, in the same letter counsel seeks to estop the defendant from cancelling the policy pursuant to *Harris* v. *Criterion Ins. Co.*, 222 Va. 496 (1981). I find this position on the part of the plaintiff to be untenable. Estoppel is not at issue here. The defendant did not cancel the policy; defendant issued a new policy.

For that matter, the *Harris* case, *supra*, supports the defendant's case. In *Harris* the insured received notice of cancellation from the insurer which was to become effective twenty-four days later. The insured did pay the premium, but it was paid twelve days after the cancellation date. According to the insurer's internal policy, a late payment made within ten days after the

cancellation date voided the cancellation and coverage continued uninterrupted. However, if payment were received after this ten-day grace period, internal policy dictated that the insurer review the history of the insured in an attempt to determine whether or not the policy should be reinstated. This latter situation is what arose in *Harris*, and the insurer decided not to reinstate the policy because the insured had missed four earlier premiums. Even though the insured "thought his insurance coverage was in effect," *Harris*, at page 502, he was unwarranted in thinking that any payment, regardless of how late it was made, would always be accepted by the insurer. "Had he been attentive, he would have been apprised of [the insurer's] standard operating procedure consistently followed in his dealings with him." *Harris*, at page 502-503.

As in *Harris*, the plaintiff was on notice of the insurer's standard operating procedure. The policy was renewed once in May of 1979, and plaintiff received another notice for renewal in August, 1979. Though *Harris* involved at least eleven cancellation notices within a six-year period, the plaintiff, in the instant case, received two renewal notices within a three-month period, and hence plaintiff, was on notice of defendant's internal policies. Despite this, plaintiff contends that prior to August 8, 1979, the date her next premium was due for renewal, she telephoned defendant to ask permission to submit a late payment. Such permission was allegedly granted. Plaintiff thus contends that, as a result of this conversation, defendant is estopped from denying her coverage, due to her reliance on this representation. Given the authenticity of this representation, which is disputed by the defendant and questionable at best, the plaintiff had until August 23, 1979, to validly make the payment and avoid a lapse. Therefore, even if the permission to pay late is proven by the plaintiff, the plaintiff should not be allowed to pay the premium more than three weeks from the alleged time this permission was granted. For plaintiff's argument to be effective, she must not only prove that the permission allowed her to pay essentially whenever she wanted to pay, but also that she was not on notice of the insurer's standard operating procedure as to renewals and lapses. Plaintiff could not reasonably rely on the alleged representations

made orally that would serve to circumvent these standard procedures.

With respect to the decision on the part of the insurer to write a policy effective August 26, 1979, *Harris* again speaks to this issue. As stated in *Harris*, "A late premium payment received after (lapse) of the policy has become effective (is) but a mere offer by the former policy holder to make a new contract of insurance which required acceptance by the company in order to constitute a binding contract." *Harris* at page 502. Thus, when the plaintiff's premium arrived on August 27, 1979, this was an offer by the plaintiff for a new insurance policy. Defendant readily accepted this offer and began new coverage for the plaintiff effective August 26, 1979.

It is my opinion that the stipulations make this a case peculiarly appropriate for summary judgment for the defendant. Defendant's renewable policy lapsed as of August 23, 1979, regardless of any alleged oral extension. Even assuming that such permission was given, plaintiff was not reasonable in assuming that such an extension would surpass the fifteen-day grace period stated in the lapse notice. The accident occurred on August 25, 1979, during the interim period between lapse and the issuance of a new policy; therefore, defendant was not the plaintiff's insurer at that time, and the defendant therefore has no obligation to pay or to defend the insured with respect this accident event.